Case 14.

ORD. PET.

## Morton, &c., *vs.* Waring's Heirs.

### APPEAL FROM HOPKINS CIRCUIT.

1. In a proceeding by ordinary petition, under the Code, the plaintiff is not bound to prove that which was not denied by the answer, unless the defendant denies any knowledge or information sufficient to form a belief on in regard to the allegation. (*Code of Prac. sec.* 125.)

2. The recitals on a deed, made by the Register of the Land Office that the requisitions of the law, to authorize him to sell, had been complied with, are evidence of that fact, but they are not evidence of other facts, as that the land sold was part of a patent for a number of acres, which did not appear in the entry listing the land for taxation, nor certificate of purchase issued by the Register.

3. It is the province of the jury to decide the fact whether a deed does or does not embrace a particular piece of land.

4. Although the laws did not provide for the appointment of a deputy Register of the Land Office, yet if an individual was employed as such in the office, when a sale was made of land for taxes belonging to a non-resident, and became a purchaser, it devolved on such a purchaser to show that his purchase was fair in every respect, and founded upon a full and adequate consideration. One dollar thirty-four cents for 800 acres of land was not an adequate consideration.

[The facts of the case are set forth in the opinion of the court.] REP.

*John H. McHenry* for appellant—

This is the second time this case has been before this court. The Hopkins circuit court had decided that the deed of the Register of the land office to Waring was void on its face. That judgment was reversed by this court at the summer term, 1855, and the cause remanded for a new trial; on a second trial the appellees recovered a judgment for the land, and the appellants have brought the case up for revision.

1. The first question made in the circuit court was a motion by appellants' counsel to exclude from the jury the paper offered in evidence purporting to be a copy of a patent, but signed *B. A. McCurdy* instead of *E. A. Macurdy*, who was the register, and who alone was authorized to certify copies from the reg-

ister's office. This motion was overruled by the circuit court, in which it is now insisted that the court erred.

2. It is insisted that the circuit court erred in refusing to instruct the jury to find for the appellants, as in case of non-suit, upon the plaintiffs' evidence. There had been no proof offered to show that the plaintiffs were the heirs at law of John U. Waring, nor any proof that the defendants were in the possession of the land sued for.

3. The court erred in refusing to instruct the jury "that if they believed, from the evidence, that John U. ' Waring, at the time of the purchase by him at the ' sale for taxes, was a deputy register, doing business ' in the register's office as such, he had no right to ' purchase at said sale, and his purchase and the deed ' made under it, was void, and passed no title, and ' they ought to find for the defendants."

This question has not been heretofore directly decided by this court. The 15th section of the act of assembly, passed 31st December, 1799, (*Stat. law*, 1086,) provides that "the register shall sell in the ' same manner, and under the like regulations, as res- ' dents lands are directed by law to be sold by the ' Sheriff in the county in which such lands lie ex- ' cept, &c." For the manner and regulations under which the Sheriff is authorized to sell, see 18 and 19 sections of the same act, (*Stat. law, page* 1365–6.) The 19 section of this act says, that "no Sheriff or deputy Sheriff shall, directly or indirectly, purchase any land that shall be exposed to sale for the payment of taxes."

It seems to me that the term *regulations* is not only expressive of the manner in which the previous steps shall be taken to authorize the sale, but is also applicable to the purchaser, and implies a restriction upon the register in the purchasing, and also his deputies. (See *Websters Dictionary*.) He, in defining the word *restriction*, definition No. 3, says, "to subject to tests or restrictions."

MORTON, &c.
*vs.*
WARING'S HEIRS

Certainly the evils intended to be guarded against, by preventing a Sheriff or his deputy from purchasing lands sold for taxes, at sales made by Sheriffs, apply in all their force to sales made by the register, and to purchases by him or his deputy, nay, with greater force, as he had the custody of the land titles of the whole country, and greater facilities for the commission of frauds. It is against the policy of the law to permit one, under such circumstances, to be a purchaser. (See *Smith &c., vs Pope's heirs,* 5 *B. Monroe,* 337, 8, 9.) It was held, that one deputy Sheriff had no right to purchase at a sale made by another deputy of the same principal. (See *also, Worland vs Kimberland,* 6 *B. Monroe,* 610.)

4. The fifth instruction should have been given, as asked by defendant. The proof is clear that there never had issued an original certificate, as the copy recited in the deed purports to be, nor does the law authorize the register to make a deed, on affidavit of the loss of the original, and the jury should have been permitted to regard that circumstance as a badge of fraud.

5. The court erred in overruling the motion for a new trial.

It is difficult to perceive how the jury could render, and the court sustain a verdict for the plaintiffs under the second and only instruction given for the defendant. This court had said, in the opinion rendered when this case was before it on a former occasion, in substance, that although the consideration expressed on the face of the deed, was grossly inadequate, and the great lapse of time between the sale and the making of the deed afforded inferences against the title acquired by the deed, and might aid essentially in its impeachment, yet these facts did not seperately, or in conjunction, render the deed void, yet these circumstances, with others apparent, might tend to show the deed to be void, and destroy the title claimed under the deed. All these circumstances were to be weighed by the jury. The other facts, in

addition to those mentioned by the court, with others which will be now stated, and which appeared in proof, were clearly sufficient, and required at the hand of the jury a verdict for the defendant: 1. It was clearly proved that Waring, at the time of the sale, was an acting deputy register. 2. The land sold was on Poage's creek; the land sued for lies on Greasy creek; and there is no proof that it is the same land. 3. The land sold was land in Henderson county; the land sued for lies in Hopkins county; and there is no proof that the land sued for was a part of Henderson before the formation of Hopkins, nor is there any proof that Peter F. Archer owned any land in Henderson county. 4. The land is described as a tract of 871 acres, and claimed to be part of a tract of 1000 acres, but there is no proof that it is a part of the survey of 1000 acres, except that it lies within it, but by what right Waring surveyed it there, does not appear. 5. There is no original certificate of sale, and the only authority which the subsequent register had, was the survey and affidavit of the loss of the certificate, in which the name of Hardin, the former register is spelled *Harding*, when it should have been *Hardin*. (*See proof.*) The endorsement on the survey, of the making of the deed, is in the handwriting of E. A. Macurdy, as shown by the proof; the presumption is strong that Waring induced Macurdy to fill up the recitals in the deed as he thought most conducive to his interest. On all these facts, the verdict of the jury should have been for the appellants.

6. The 9th instruction given for plaintiffs is clearly erroneous. It is not true that all the recitals in the deed of the register are to be taken as true; such is not the law. The recitals are only to be taken as true so far as they contain the official statements of the official acts of the register, and as appears to him officially; further than this they are not to be taken as true. It was not competent for the register to say that the land sold was part of 1000 acre sur-

vey, when that fact did not appear in the entry of the land for taxation, or that the land was on a creek the name of which is different from that stated in the entry of the land, on the books of the register for taxation. (*See Allen vs Robinson*, 3 *Bibb*, 326.)

The court should have given defendants instruction No. 10. The burden of proving that the land conveyed was the land in fact sold for the taxes, devolved on the plaintiff though it might be shown that there was a mistake, that devolved on the plaintiff. (*Graves vs Hayden*, 2 *Litt.* 65.) If a Sheriff sells land as lying on one water course, which, in fact, lies upon another, the sale is invalid; (*Cruise vs Fowler*, 5 *J. J. Marshall*, 182,) hence the necessity of proving that Poage's creek and Greasy creek was the same stream, which was not done.

The instruction, No. 3, moved by defendant, ought to have been on the authority of the case of *Bleights' heirs vs Banks*, 6 *Monroe*, 206, and *Same vs Atwell*, 7 *Monroe*, 268.

The court below also erred in refusing to appoint commissioners under the provisions of the occupying claimant law. This case is believed to be embraced by the equity of that law; and in case the appellants fail in reversing the judgment, it is desirable that this court settle that question, and direct that the case shall be transferred to the equity docket, or in some other mode secure to the appellants compensation for improvements made under the honest belief that they were improving their own land. (*See Petty vs Malier*, 16 *B. Monroe*, 604, 5.)

*John Rodman* on the same side—

The appellants rely on the following points for a reversal of the judgment of the circuit court:

1. That John U. Waring, the ancestor of the appellees, being a deputy in the register's office, and doing business as such at the time of the alledged sale for taxes, could not become a purchaser at such sale. Upon the question of fact the proof is clear.

The act of the legislature authorized Sheriffs to sell lands for taxes. (*Stat. law,* 1365.) By the 19 *sec.* of the act deputy Sheriffs were prohibited from purchasing at such sales. The 15 *sec.* of the same act authorized the register of the land office to sell the lands of non-residents for taxes, "in the same manner and under the like regulations, as residents lands are directed to be, by law, sold by the Sheriff." The reason for prohibiting a deputy Sheriff to buy at sales for taxes applies with equal force to the register and his deputies.

The court in *Sampson vs Overton,* 4 *Bibb,* 409, recognized the act and attestation of a deputy register as valid. Bouvier, in his law dictionary, title *deputy,* says a ministerial officer may appoint a deputy.

One who acts as a deputy is estopped to deny that he was a deputy. (*Hughes vs James,* 3 *J. J. Marshall,* 700.) The reasoning of this court in *Smith vs Pope's heirs,* 5 *B. Monroe,* 338, is conclusive on this question. It is against the policy of the law to permit one to be both vendor and purchaser himself, or through those who are connected officially or fiducially with him.

2. The circuit court erred in refusing to grant a new trial, for the reason so fully set forth by adjunct counsil that it is not deemed necessary to enlarge upon them.

*James Harlan* for appellee—

The questions that arise in this court are on the instructions given or refused by the circuit court. Seven instructions (marked from 3 to 9 inclusive) were given at the instance of the plaintiffs, the substance of which are—

1. The fact that John U. Waring was a clerk in the register's office did not vitiate the deed made to him by the register.

2. That the smallness of the consideration paid by Waring did not invalidate the deed of the register.

3. That the title of the land embraced in the patent to Archer passed by the register's sale, and vested in John U. Waring, and upon his death descended to his heirs, and the jury should so find, unless they believe the deed was obtained by fraud, or that the law regulating sales of land for taxes was not complied with; and that the burthen of proof to establish these facts was on the defendants.

4. As to the duty of the register in advertising the sale of land for taxes. The law presumes that the register performed his duty, until the contrary is shown by proof.

5. If the patent to Archer, and the deed from the register, cover the land in contest, the jury must find for the plaintiffs unless they find that the deed from the register was fraudulently obtained, and the recitals therein false, but the burthen of proof to establish these facts was on the defendants.

6. The law presumes that the official acts of the register, auditor, and treasurer were properly performed until the contrary is proved, and that the burthen of proof, to invalidate the official acts of these officers, or either of them, rests on the defendants.

The foregoing embrace the substance of the plaintiffs instructions.

I am unable to perceive any substantial objections to these instructions. They embrace, according to my view of the facts, the law of the case. The validity of the register's deed had been sustained by the opinion of this court. *Prima facie* it conveyed a valid title to the land, but the defendants had the right to assail it. Whether they succeeded or not was a question of fact for the jury to decide.

It is now the settled law of this court, that a deed made by the register of the land office, purporting to have been made for the sale of land for taxes, implies *prima facie* a compliance with the requisitions of the laws under which the land was sold and the deed executed. (3 *Bibb*, 328; 2 *Marshall*, 244; 2 *Litt.* 65; 3 *Monroe*, 211, 271; 5 *J. J. Marshall*, 152.

I have not seen any evidence in the record to impair the legal effect of the deed.   The land was sold by the register in 1812, for taxes due thereon, and Waring became the purchaser thereof.

But it has been argued that Waring was a deputy register, and incapable of making the purchase.   To that proposition I have two answers—*first*, it is not proved he was a deputy register, but *second* if he had been he had the right to purchase.

The old statutes relating to the register's office may be found in the volumes of Littell's laws of Kentucky.   Volume 1, pages 75, 159, 174, 216, 235, 368. Volume 2, pages 111, 274, 334, 324, 327, 328.   Volume 3, pages 210, 313.

The act of 1799, section 15, (2 *Littells laws*, 324,) prescribe the manner that non-residents shall enter their lands for taxation.   It is to be done in the auditor's office, and the taxes paid into the treasury every year.   If there is a failure the auditor is to transmit a list thereof to the register, who is directed to make sale thereof, after having advertised in the manner prescribed by the act.   The register is directed "to sell the same at public auction, at the state house in Frankfort, in the same manner, and under the *like regulations*, as residents lands are directed by law to be sold by the Sheriff in the county in which such lands lie," except as to the manner of advertising.   The register reports the sales made by him to the auditor.

The 19th section (*page* 328) prohibits a Sheriff or deputy Sheriff from making any purchase of land sold for taxes, and declares that if any such purchase is made the land "shall be forfeited to the state."

It has been argued, that the words *like regulations* embrace a clerk in the register's office; that he and a deputy Sheriff stand on the same footing.

It seems to me that is a far-fetched idea.   From 1792 to 1796 the register was paid by his fees.   In the latter year (1 *Litt.* 368,) the legislature fixed the

salary of the register at £200, and all of the fees over that sum were to be paid into the treasury. The books and stationery were to be furnished by the state, and nothing was allowed for clerk hire. It may be assumed, I think, with certainty, that no law had been passed up to the time the sale in this case was made (1812,) authorizing the employment of clerks in the register's office. If any were employed it was a private matter between the employer and employees. The law did not recognize any such officer as *deputy register*, as it did that of deputy Sheriff and deputy clerk.

The swearing of a clerk in the register's office was an unauthorized act, and passed for nothing in a legal sense.

I conclude, therefore, that J. U. Waring was not prohibited or incapacitated to bid at a sale made by a register of the land office of lands for the non-payment of taxes.

It has been argued that the original certificate was lost, and a duplicate obtained. There is no validity in that objection. The act of 1799 required the register to report to the auditor a list of the sales made by him; and it is not pretended that the auditor's books do not show that a sale of Archer's land was made, and that Waring was the purchaser.

There are some minor questions raised by the counsel for appellants, which are not entitled, in my judgment, to any serious consideration, such as the distinction between Poages' creek and Greasy creek. They are doubtless the same stream; and the land entered for taxation as lying in Henderson county, on Poages' creek, is the same now in controversy, lying in Hopkin's county, on Greasy, formerly called Poages creek. Henderson county was created December 21, 1798, (2 *Litt. L.* 227.) Hopkins county was created December 9, 1806, (3 *Litt. L.* 346,) and was formed entirely out of Henderson. Poages creek

is laid down on the last map of Kentucky as lying in Hopkins county.

I have not been enabled to perceive the ground upon which the charge of fraud against Waring can be maintained. The appellants do not pretend to say the 1000 acres of land were not sold by the register in November, 1812, for the taxes due thereon. Is there any charge of fraud against the register? None is intimated. Do they say that the register did not report that sale to the auditor, as required by the act of 1799? If it were sold, and sold fairly and according to law, there was a purchaser. But they say that purchaser was not authorized, or rather was disqualified, from bidding, and that the sale was illegal, and consequently the same result followed as if a deputy Sheriff had bid at a sale made by a Sheriff for the non-payment of taxes due by a resident owner of land. And what is that? Why a forfeiture of the land to the commonwealth. It does not dispense of office fund, and according to the common law, there can be no forfeiture without office found. (1 *Littell's Rep.* 59, *Barbour vs Nelson.*

I am aware of the disinclination of courts to enforce the law by taking from one man and giving to another property when the consideration is grossly inadequate; but the courts are not responsible for the provisions of a law that has been made by another department of the government. The expediency of a law is a matter of which a court cannot consider. Courts are to expound what the law is, not what the judges think it ought to be.

In this case the court decided, in 1855, that the deed made by the register was a valid instrument, and could not be overthrown except by showing it was fraudulently obtained.

I think there is no plausible ground shown to authorize any conclusion of the sort. And the plaintiffs below having shown that they were possessed of the better legal title were entitled to a judgment, and having obtained it, it should be affirmed.

MORTON, &c.
*vs.*
WARING'S HEIRS
July 2, 1857.

Judge SIMPSON delivered the opinion of the court.

This action was brought by Waring's heirs against appellants to recover a tract of land patented in the name of Peter F. Archer, who was a non-resident, and which had been sold by the register of the land office for taxes due thereon, and purchased by John U. Waring in 1812, that being the time the sale was made.

The appellants claim the land by deeds of conveyance from the heirs, or some of the heirs, of the patentee; and contest the validity of Waring's purchase, and the deed made to him in pursuance thereof in 1828, by a subsequent register of the land office.

On the trial in the circuit court the plaintiffs read a patent to Archer, for one thousand acres of land, and the register's deed to their ancestor, John U. Waring, for eight hundred and seventy-one acres thereof, which deed and patent the defendants admitted embraced the land in contest, and the plaintiffs having then announced that they had finished their evidence, the defendants moved the court to instruct the jury to find as in the case of a non-suit, which motion was overruled, and it is now contended that the court erred in overruling that motion.

The ground upon which it is insisted that the motion should have been sustained was the failure of the plaintiffs to prove they were the heirs at law of John U. Waring, deceased, and also in failing to show that the defendants were in the possession of the land sued for.

The plaintiffs having however alleged, in their petition, that they were his heirs, and having sued in that character and the fact that they were his heirs not having been denied by the defendants in their answer, the allegation had to be taken as true, and it was unnecessary to prove it. The defendants had to deny each allegation of the petition, which they intended to controvert, or any knowledge or information thereof sufficient to form a belief. (*Code of Practice, section* 125.) And, as it subsequently ap-

1. In a proceeding by ordinary petition, under the Code, the plaintiff is not bound to prove that which was not denied by the answer, unless the defendant denies any knowledge or information sufficient to form a

peared in evidence, during the progress of the trial, that the defendants were in the possession of the land in contest at the commencement of the action, the defect in the plaintiffs testimony, on that point, was thus supplied, and any error in the previous decision of the court thereby corrected. So also with respect to the objection made to the copy of the patent read in evidence on the trial by the plaintiffs; if that copy was not properly certified the defect was cured by the copy of the same patent which was afterwards given in evidence by the defendants themselves.

It is also contended, that the instruction to the jury, given at the instance of the plaintiffs, to the effect the law presumed that all the statements and recitals in the register's deed to Waring were true, was improper and erroneous. The doctrine is well settled that the statements in a register's deed, showing that the requisitions of the law in relation to sales for taxes made by him have been complied with, are evidence of that fact, and to that extent therefore the instruction was unobjectionable; but the deed recites the additional fact, that the eight hundred and and seventy-one acres of land purchased by Waring was a part of the one thousand acres patented to Archer. That fact did not appear in the entry listing the land for taxation, nor by the certificate of purchase which was issued by the register, nor was its recital essential to the validity of the deed, nor was it one which the register could be presumed to know, and consequently its recital in the deed was not evidence of its truth. It was a matter for the jury to determine, and which they might have presumed to be the fact from the circumstance which was proved, that one hundred and twenty-nine acres of the one thousand acres contained in the patent had been previously sold and conveyed to William Noel by the patentee.

But as it was a fact for the jury to determine and one which the court had no right to assume, the fifth and eighth instructions, given at the instance of the

---

MORTON, &c.
vs.
WARING'S HEIRS

belief on in regard to the allegation. (*Code of Prac. sec.* 125.)

2. The recitals in a deed, made by the Register of the Land Office that the requisitions of the law, to authorize him to sell, had been complied with, are evidence of that fact, but they are not evidence of other facts, as that the land sold was part of a patent for a number of acres, which did not appear in the entry listing the land for taxation, nor certificate of purchase issued by the Register.

3. It is the province of the jury to decide

MORTON, &c.
vs.
WARING'S HEIRS

the fact whether a deed does or does not embrace a particular piece of land.

4. Although the laws did not provide for the appointment of a deputy Register of the Land Office, yet if an individual was employed as such in the office, when a sale was made of land for taxes belonging to a non-resident, and became a purchaser, it devolved on such a purchaser to show that his purchase was fair in every respect, and founded upon a full & adequate consideration.— One dollar thirty-four cents for 800 acres of land was not an adequate consideration.

plaintiffs, by which the jury were told that if the land in contest was embraced in the patent to Archer the title to it passed to Waring by the register's sale and deed, were also misleading and erroneous. Whether the land included in the patent, and the land purchased by Waring at the register's sale, was the same land, was a matter that ought to have been referred to the jury for their decision; and unless it was the same the title to it did not pass to Waring by the register's deed.

It appeared, on the trial, that Waring was acting as a deputy in the office of the register of the land office, at the time he made the purchase of the land in contest, and the principal question in this case is, to what extent is the validity of his purchase, affected by that circumstance.?

To obviate any objection that might be made on this ground, to the legality of his purchase, it is contended that the law did not authorize the register to appoint a deputy, and consequently that Waring cannot be regarded as occupying that position when he made the purchase. But there are two obvious answers to this argument. *First.* He was in fact acting as the deputy of the register at the time, and would be thereby subjected to the same disabilities that a legal deputy would labor under. And in the *second* place, the duties of the register of the land office being merely ministerial, he could perform them by deputy, and had a right to appoint and employ one for that purpose, although the power to do so was not conferred on him by any express statutory provision   This court has heretofore decided this point in the same way, and the decision seems to be sustained by well established principles of the law on the same subject. (*Sampson vs. Overton*, 4 *Bibb*, 409.)

How far then is the validity of Waring's purchase affected by the fact that he was the deputy of the register, at the time the latter sold the land for the taxes due thereon ? The statute expressly prohibits

a deputy sheriff from purchasing at a sale of land for taxes, made by his principal, and inasmuch as the statute provides that the register shall sell in the same *manner* and *under the like regulations*, as resident's lands are directed to be sold by the sheriff, it is insisted that the statutory prohibition applies to a deputy register as well as to a deputy sheriff. On the other side, it is contended that the requisition of the statute is confined to the *mode* in which the sale is to be made by the register, and that by prescribing the regulations under which the sale is to be made the language of the statute cannot by any reasonable construction be made to designate the persons who may or may not purchase at the sale.

By a liberal construction of the statute the prohibition might be regarded as applying to a deputy register, as well as to a deputy sheriff, and the evil intended to be guarded against would seem to require that such a construction should be given to it. But conceding that a deputy register is not embraced by the statute, still it would be against the policy of the law to permit him to purchase at sales made by his principal, and although his purchase might not, for that reason alone, be deemed absolutely void, yet like all purchases made by persons whose positions confer on them advantages which others do not possess, it can only be sustained by its appearing to be, in every respect, fair, free from all suspicion, and made for a full and adequate consideration. In this instance the price paid for eight hundred and seventy-one acres of land was one dollar and thirty-four cents, not the then value of one acre of the land embraced by the purchase. This great inadequacy of consideration would not, of itself, render the sale and purchase void or fraudulent in the hands of an ordinary purchaser, but here the purchaser, on account of the position he occupied, was, according to the well settled doctrine of the law, only permitted to buy on the condition that he paid a full and fair price for the land purchased by him. The law did

not allow him to use his office for the purposes of speculation, or as a means of obtaining an unreasonable and unconscientious advantage in the purchase of the lands of non-residents. He may not have been absolutely prohibited from purchasing, but the policy of the law required that any purchase he made should be subjected to the closest scrutiny, and condemned as illegal, unless it was fair in every respect, and founded upon a full and adequate consideration.

It was this principle of public policy which induced the legislature to prohibit deputy sheriffs from purchasing at sales made by their principal, intending thereby more effectually to guard against the evil, the suppression of which was contemplated by the law, by prohibiting such purchases absolutely, and not regarding them as valid under any circumstances.

The purchase made by Waring, when tested by these principles, was wholly invalid, and the court should so have instructed the jury, provided they beleived that Waring, at the time he made the purchase, was *acting as a deputy* of the register of the land office.

Wherefore, the judgment is reversed, and the cause remanded for a new trial and further proceedings consistent with this opinion.